The next case is Puri v. USA. Good morning, Your Honors, Derek Vollrath here for Appellant Sabina Puri. I would like to reserve two minutes for rebuttal and may it please the Court. The government and the district court below have staked out a position in this case that is really remarkable. They conclude that in a summons enforcement proceeding involving a request from a foreign country, the requesting country's bad faith is never relevant. This conclusion is the sole issue on appeal in this case and the Court reviews it de novo. It is incorrect and it should be reversed. The district court's determination flies in the face of the fundamental principle that courts have the power and the obligation to ensure that their process is not abused. Here specifically, the Court below held that it was powerless to quash a summons brought by India against a United States bank that covered the details of an American citizen's financial transactions going back 16 years to when the citizen was in grad school. The bank records sought include the petitioner's primary U.S. checking account and would reveal almost all of the petitioner's financial transactions during that period. As we spelled out in our briefing, it is a full picture of even the most intimate details of a petitioner's private life and it's the sort of information that is ripe for abuse by bad actors. Could you say a little bit about, if we were to accept your position, what sort of proceedings you envision happening on remand? I mean, I take it the district court would have to have some hearing to investigate the So, an Indian official would have to come to Los Angeles and testify about what the Indian government had in mind with its investigation? We certainly would like a hearing, but actually I think there's an intermediary step and that's set forth by the Supreme Court's decision in United States v. Clark. And what it says is that the petitioner must point to specific facts that plausibly suggest bad faith. And only upon pointing out that, those specific facts, the court evaluates them and decides if they arise to the level of plausibly suggesting bad faith. And if it meets that threshold, then a hearing is held. Now at that hearing, I do think it would be appropriate for the petitioner to be able to call a representative of the Indian Taxation Authority. I mean, that's pretty extraordinary, isn't it, for the United States District Court to have a hearing to investigate the operations of a foreign government? Is there any other context in which we do anything like that? I know that in the extradition context, there is an inquiry into the good faith of the extradition request. And I can certainly supplement other instances with the court in a letter if the court would like. But beyond the extradition context, I don't have a example of other. But in the extradition context, there's treaties that would allow for that type of inquiry. Isn't that correct? Yes. And I think that there are treaties that allow for that kind of inquiry in this case. For example, in Article 28 of the Indian Tax Treaty, Paragraph 3, it says that in no case shall the obligations of Paragraph 1 be construed so as to impose upon the contracting state — that's America — the obligation to carry out administrative measures at variance with the laws and administrative practice of that other contracting state, or to supply information the disclosure of which would be contrary to public policy. And so there is this built-in language in the treaty saying that these typical protections, this sort of fundamental, almost due process protection in POW, to guard against the court becoming complicit in the abuse of process, still exists. And so I think that the Indian Treaty does allow for — and I want to emphasize that the position the government and the district court has taken is so extraordinary that you would expect that it would be explicit if Congress, through this treaty, intended to undo the district court's power to police abuse of process before it. There are certain facts here, Counsel, which is for a long time, Petitioner has spent half a year, more than half a year, in India. She's got a home there. She filed Indian income tax returns for multiple years. Why aren't those facts enough for us to assess the plausibility standard, even if we accept your argument? Well, we would like the court, the district court, to assess the plausibility standard and consider the facts that we have put forth showing India's bad faith, or plausibly suggesting India's bad faith. But the court just didn't engage in that analysis. It said explicitly that the only bad faith relevant was the bad faith of the IRS, not India. And so it didn't consider the evidence we put forth, which includes — Can we look at those facts to say, based on those factors, a remand for an evidentiary hearing is not necessary? Again, Your Honor, we aren't asking for remand for an evidentiary hearing at this point. We are asking for remand to evaluate the plausibility of the showing that we have made. However — Well, that's what I'm saying. Can we look at those facts to say, well, we can make the plausibility determination and, based on those facts, an evidentiary hearing would not be necessary, so, therefore, a remand is not an appropriate remedy in this case? Can we do that at this level? It sounds to me like Your Honor is asking if there's a sort of harmless error analysis or something akin to that. I would point out that the government did not urge that in its briefing, and instead urges the court to affirm the district court's determination that a foreign government's bad faith is never relevant. But we would object to that. I'm taking your analysis because you're saying, okay, the lower court erred by determining that bad faith is irrelevant. And so even if we accept your argument that at some point, under some circumstances, bad faith can be a legitimate consideration, you have to look at the allegations, get past the plausibility standard, and then get to an evidentiary hearing, at which you would then be entitled to some discovery of the Indian authority's bad faith, right? That's the analysis that you've laid out. Did I understand that correctly? Yes. So under that analysis, can we look at the allegations, the admitted facts in this case, and say, okay, well, they're not plausible, such that a remand for an evidentiary hearing to go through the steps that you've laid out is not necessary for this particular case? Candidly, I don't think the court can because it was not urged in the government's briefing. However, even if the court were to undertake that analysis, I think that we have met that showing. We have put forward facts showing that the ruling party in India does abuse the Indian taxation authorities to harass its political opposition. We have put in information that shows our clients' connections to very high-up people in the Indian National Congress, which is the opposition party. Additionally, we have shown the sort of stunning breadth of the summons and its collection of information that is ripe for abuse. And most importantly, we have shown that the Indian authority actually lied to the United States in seeking its summons. It said, according to an affidavit attached to the government's motion to dismiss, the Indian taxation authorities informed the United States that they had exhausted their ability to obtain this information in India through Indian process. And in fact, that's not true. Not only have they not initiated any process at all to obtain this information in India, they had not even made an informal request or a request formal or otherwise directly from the petitioner. And that's important because that would have given the petitioner the opportunity to avail herself of process in India, to negotiate the scope of the summons, or even to, you know, do things like redact certain sensitive transactions. I see that my time is nearing its end. MS. TURBEVILLE. Good morning, and may it please the Court. My name is Allison Turbeville, and I represent the United States in this appeal. The court below correctly concluded that a treaty partner's motivations do not factor into a district court's analysis in a treaty-initiated summary summons proceeding. The Supreme Court in Stewart held that the relevant inquiry under Powell's second step is whether the IRS is attempting to abuse the court's process, not whether the treaty partner is attempting to do so. This court reached the same conclusion in Litas, holding that so long as the IRS itself acts in good faith under Powell and complies with applicable statutes, it is entitled to enforcement of its summons. Taxpayers' argument here boils down to the same argument that the Supreme Court, this  The district court has a limited role to play in treaty-initiated summary summons proceedings, and that is to decide whether the IRS acted in good faith in issuing the summons after receiving a treaty partner's request. MR. CARNEY. Counsel, can I ask, does the IRS undertake any sort of analysis of India's motivation before they issue this opinion? Pina, do they do a good faith analysis itself? MS. TURBEVILLE. No, Your Honor. It is not the IRS's job to second-guess a facially proper treaty request. Here, the IRS issued the summons after the U.S. competent authority, which is a part of the IRS, determined that the request was facially proper and that it was appropriate to issue the summons. If the U.S. competent authority determines that a summons is facially proper, the treaty actually requires the United States to provide the requested assistance. Here, the court below did not clearly err in finding that the IRS issued the summons for a proper purpose, to comply with the United States' treaty obligation. MR. CARNEY. And just to follow up on Judge Bumate's question, I mean, is this – is that typical of treaties that we have with most of the countries with which we have these treaties, that we – that the United States, even the executive branch, has no discretion to refuse enforcement, even if it thinks that the request is for an improper purpose?  BUMATE. Your Honor, the treaty does allow for the IRS to decline to issue a summons if, for example, it violates public policy. There are several reasons set out in the treaty itself. Here, the U.S. competent authority, who evaluates all of these treaties under various – or all of these requests under various treaties, determined that this request was facially proper and, therefore, it was appropriate to issue the summons. MR. CARNEY. But so – but would they have – I mean, I guess this is a question, but would they have had the authority without – under the American view of the treaty, without putting the United States in breach, would they have had the authority to say, well, this is facially proper but, you know, based on other information we have, we think it's for an improper purpose so we're not going to enforce it? MS. BUMATE. Yes. That's correct, Your Honor. Under the treaty, they can decline to exchange information with India if it would violate the United States' public policy. That's correct. MR. CARNEY. So in this case, if India was acting in complete bad faith, wouldn't that violate United States' public policy? MS. BUMATE. Your Honor, yes. Yes, it would. But here there is no evidence that the IRS had any indication of India's alleged bad faith when it issued the summons, which is the relevant date on which the validity of a summons is tested. Here the U.S. competent authority declared under penalty of perjury that she determined that it was appropriate to honor the request and to exchange information with India before the IRS issued the summons and, indeed, after taxpayer filed her petition in this case, the U.S. competent authority reconfirmed with the Indian tax authority that there was a continuing need for the information, that the statute of limitations remained open for all of the tax periods at issue, and that any information exchange would only be used for treaty purposes. MS. BUMATE. And how much room do the courts have in examining the IRS's determination that it would not be in violation of policy to issue the summons? MS. BUMATE. Your Honor, as I noted before, the district court has a very limited role here. Its role is to decide, did the IRS issue the summons in good faith after receiving the treaty request? Step two of Powell allows a taxpayer to offer rebuttal arguments and defenses, but we are not aware of any cases that hold that a treaty partner's motivations should be considered at step two, and this would be the first court ever to do so. Taxpayer has not argued and does not contend on appeal that the IRS acted in bad faith in issuing the summons, and so the district court properly denied her petition. MR. GARRETT. Counsel, do you know of any other situations where a district court can declare that a foreign government is acting in bad faith? Opposing counsel mentioned extradition. Is that analogous here? MS. BUMATE. I'm not aware, and I'm not familiar enough with the extradition context to be able to speak about that, but I'm not aware of that. In fact, India is not a party here, so this court could not, and the district court could not enjoin the Indian tax authority from violating the treaty or from otherwise disclosing taxpayer 's financial information. As we noted in our brief, one can easily imagine a situation in which our international relations might be damaged if courts were free to look behind treaty requests that, as here, have been deemed facially proper by the U.S. competent authority. If the court wanted to provide taxpayer with an evidentiary hearing and discovery, India, if it decides to respond at all, would presumably respond that its request was not politically motivated. And if the court were to disregard that response and characterize India's treaty request as made in bad faith, this would place the executive branch in an embarrassing position, potentially. If the Indian tax authority were to ultimately make an improper disclosure, taxpayer can notify the U.S. competent authority, who has confirmed that treaty violations would be I think it's important to remember that the court's process is not being invoked by India here. As I noted, India is not a party, and India does not touch the court's process. The IRS does that, and that's why the inquiry properly focuses on whether the IRS is attempting to abuse the court's process. Because taxpayer has made no such contention, the district court properly denied her petition. Does the government have a view on whether this court could or should do something along the lines of what was suggested by Judge Wynn in her question to your friend, which is to say, even assuming that bad faith on the part of the requesting country can be a reason to deny enforcement, there hasn't been a plausible case made here? Your Honor, we do believe that a remand would be appropriate here, because the court below decided that India's motivations do not factor into the district court's analysis. We believe that that conclusion was correct for all of the reasons that I've previously stated, but if the court were to disagree with us, we think that a remand would be appropriate for that court to determine whether taxpayer has met her heavy burden on rebuttal. The court below has already cast doubt on all of taxpayer's allegations regarding India's bad faith in the magistrate judge's report and recommendation, but we do believe that a remand would be appropriate. I'm happy to answer any additional questions the court might have. If there are no further questions, we rest on our brief and ask the court to affirm. Thank you very much. Thank you. I'll need to be quick. I want to emphasize the stakes here. This case is about an Indian treaty, but we have similar treaties, virtually identical treaties, with other countries, such as the Russian Federation, China, Venezuela, Turkey, and Hungary. These are regime or governments that are trending authoritarian and that can use the information that is gathered under these summons for very bad purposes. Counsel, doesn't that count against you, actually? I mean, that points out these are very tricky times with those countries, and for a district court judge to then say that these countries are acting in bad faith can really upset the balance between nations. Absolutely not, Your Honor, because the treaties and the IRS statutes implementing these summons and enforcement proceedings don't speak to the removal of a court's inherent authority to police the abuse of its process. If that were going to be, it's basically the courts, and frankly on an extreme misreading of Stewart, who are usurping this authority from themselves without congressional instruction. I want to point to one thing before I close, and that is that the government has said no court has ever held that the bad faith of a foreign country is relevant. I want to point to U.S. Manufacturers and Traders Trust. It is a Second Circuit decision, 703 F. 2nd 47, cited in the government's brief, actually. And that was the case which Stewart conflicted with, the Ninth Circuit and Stewart versus the Second Circuit in this decision. The Supreme Court reversed the Ninth Circuit and essentially blessed this Manufacturers Traders Trust Company opinion. Now the narrow issue in those cases was whether a civil summons issued for a criminal, furthering a criminal investigation, constituted bad faith. Here it does because it's skirting the grand jury, and other countries maybe not because they don't have grand juries. But I want to point to this language at the very end of the opinion. The Second Circuit says there are other components of bad faith which might apply even to this type of international case. For example, harassment of the taxpayer, putting pressure on him to settle a collateral dispute, or possibly invasion of a recognized privilege such as the attorney-client privilege. But that is the Second Circuit saying, hey, there isn't actually any bar on us examining whether enforcing this summons would constitute an abusive process, rather that bar is entirely from a misreading of some isolated language in Stewart. Thank you, Your Honor. All right. Thank you very much. Both sides for your argument.
judges: NGUYEN, MILLER, BUMATAY